Charlene McCOLLUM,
Plaintiff-Appellant,

v.

William F. BOLGER, et al.,
Defendants-Appellees.

Tony D. McCOLLUM,
Plaintiff-Appellant,

v.

William F. BOLGER, Postmaster General
and National Rural Letter Carriers Association, Defendants-Appellees.

Timothy D. McCOLLUM,
Plaintiff-Appellant,

v.

William F. BOLGER, Postmaster
General, Defendant-Appellee.

Nos. 85–8680, 85–8681 and 85–8682.

United States Court of Appeals,
Eleventh Circuit.

July 23, 1986.

---

**8.** *See Allen v. Autauga County Board of Education,* 685 F.2d 1302, 1305–06 (11th Cir.1982).

**9.** *Id.* at 1306.

**10.** *Id.*

William D. Mallard, Jr., Atlanta, Ga., for plaintiffs-appellants.

Nina L. Hunt, Asst. U.S. Atty., Atlanta, Ga., Lori Joan Dym, Office of Labor Law, U.S. Postal Service, Eric J. Scharf, Washington, D.C., for defendants-appellees in 85–8680, 85–8681.

James T. Langford, Atlanta, Ga., for Nat. Rural Letter Carriers Ass'n.

Nina L. Hunt, AUSA, Asst. U.S. Atty., Larry D. Thompson, Atlanta, Ga., Lori Joan Dym, Office of Labor Law. U.S. Postal Service, Eric J. Scharf, Washington, D.C., for defendant-appellee in 85–8682.

Before CLARK, Circuit Judge, HENDERSON\*, and WISDOM\*\*, Senior Circuit Judges.

---

\* *See* Rule 3(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

\*\* Honorable John Minor Wisdom, Senior U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

WISDOM, Senior Circuit Judge:

This is not the usual employment discrimination case, as one might think from the pleadings. The dispute here began and continued as a result of the personal animus the plaintiffs bore for a postmaster whom they blame for certain set-backs they suffered as postal employees.

The plaintiffs are three members of the McCollum family. The local defendant is George T. Howard, Postmaster of the Rome, Georgia, branch of the United States Postal Service (USPS). Although many issues have been presented by the parties, the primary issue on appeal is what constitutes a legitimate, nondiscriminatory reason for personnel action adverse to an employee. In addition to their animus against Howard, two of the plaintiffs did not get along well with their union representatives and they have appended unfair representation claims to their discrimination complaints.

The plaintiffs are Charlene McCollum and her two sons, Tony and Timothy McCollum. Charlene and Tony are rural letter carriers in Rome, Georgia. Timothy applied for employment as a rural letter carrier in Rome and was rejected. The plaintiffs have asserted claims against the Postmaster General of the United States and several other defendants. These claims may be grouped into three categories: constitutional claims, Title VII claims, and unfair representation claims. The district court dismissed one of these claims, granted the defendant's motion for summary judgment on another, and entered a judgment on the merits in favor of the defendants on the remaining claims. We AFFIRM.

## I. FACTS

Charlene McCollum began working at the Rome, Georgia Post Office as a substitute rural letter carrier in 1972. She became a regular rural carrier five years later. Tony McCollum went to work as a substitute carrier in 1977 and became a regular carrier in 1982. Timothy McCollum applied to be a substitute carrier in 1979. His application was denied. His sister, Vickie Dorsey, applied at the same time and was also rejected. The Postmaster in Rome during these years, George T. Howard, supervised the work of Charlene and Tony McCollum and reviewed Timothy McCollum's employment application.

There was evident hostility between the McCollum family and Postmaster Howard that began in the late 1970's and intensified over the years. In 1981 Charlene McCollum's route and another carrier's route were reduced in length because they were overburdened. Both carriers were then classified at a lower pay level. The other carrier was a male whose pay was slightly higher than Charlene McCollum's pay after the reclassification—approximately $15 more per week. In the same year her route was reduced, Charlene McCollum was issued a notice of removal from employment with the USPS. The grounds for her removal were insubordination and failure to follow instructions. The removal was later converted to a 78-day suspension. She filed a complaint of age and sex discrimination with the USPS. The bases of her complaint were the reduction of her route and her removal.

Tony McCollum represented his mother in pursuing her discrimination complaint. Also, he replaced his mother as the carrier for her route during her suspension. For the first few weeks he filled his mother's position, Tony worked six days a week, earning overtime pay on Saturdays. Postmaster Howard reduced Tony's work week to five days by assigning a substitute carrier to work on Wednesdays. This deprived Tony of overtime pay and of a two-day weekend. On the first Wednesday his substitute was scheduled to work, Tony appeared at the Post Office even though he had been informed by Howard not to do so. Postmaster Howard issued a letter of warning to Tony because of this incident. Tony McCollum filed a discrimination complaint with the USPS. He argued that the reduction in his work week and the issuance of a warning letter were based on sex discrimination and also were an unlaw-

ful reprisal for representing his mother in her discrimination action.

At the same time they were feuding with Postmaster Howard, Charlene and Tony McCollum did not get along with their union steward, John King. King was the local steward for the National Rural Letter Carriers Association (Union) from 1971 to 1981, when he was replaced as steward by John Chandler. The McCollums filed four grievance complaints in 1983—one by Charlene and three by Tony—that they assert were not properly handled by the Union. The reason they have proffered for the Union's failure to press their grievances is that John King maintained an influence over the Union and, because of his animosity toward the McCollums, he convinced John Chandler to drop their claims.

The many grievances against Postmaster Howard, the USPS, John King, and the Union, led the McCollums to filing lawsuits in the Northern District of Georgia in 1983. Charlene sued William Bolger, the Postmaster General,[1] for age and sex discrimination; the Union for breach of its duty of fair representation; and Postmaster Howard for violation of her First and Fifth Amendment rights. Tony McCollum sued Bolger for sex discrimination; the Union for breach of its duty of fair representation; and the USPS for violation of his First and Fifth Amendment rights. Timothy McCollum sued Bolger for sex discrimination.

The district court granted Postmaster Howard's motion for summary judgment on Charlene McCollum's action against him for alleged constitutional violations. The court dismissed Tony McCollum's complaint against the USPS for lack of subject matter jurisdiction because the govern-

ment's sovereign immunity had not been waived. After a bench trial, the district court entered a judgment for the defendants on the remaining claims. The plaintiffs filed a timely notice of appeal. We affirm.

## II. CONSTITUTIONAL CLAIMS

Charlene and Tony McCollum allege that their First and Fifth Amendment rights were violated during the course of their employment with the USPS. Charlene sued only her supervisor, Postmaster Howard, while Tony sued only the USPS. The district court never reached the merits of these claims.

### A. *Charlene McCollum*

The district court properly dismissed Charlene McCollum's constitutional tort action against Postmaster Howard. In *Bush v. Lucas*,[2] the Supreme Court held that a federal employee could not maintain a cause of action against his supervisor for violations of his First Amendment rights.[3] The Court declined to conclude that the Constitution supports a private cause of action in cases in which the plaintiff's claim for relief arises out of an employment relationship governed by procedural and substantive administrative provisions that establish an effective remedy for constitutional violations by the government.[4] The *Bush* analysis has been applied to Fifth Amendment claims as well as First Amendment claims.[5]

The *Bush* decision was based on a careful analysis of *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*[6] and its progeny,[7] cases in which the Supreme Court held that the Constitution provided a cause of action for

1. William Bolger was the Postmaster General when these lawsuits were filed. He no longer serves in that position.

2. 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983).

3. *Id.* at 380–90, 103 S.Ct. at 2412–18.

4. *Id.*

5. *See Wells v. Federal Aviation Administration*, 755 F.2d 804, 809 (11th Cir.1985).

6. 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

7. *See Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980).

damages against federal officials. The *Bivens* line of cases confers "adequate power to award damages to the victim of a constitutional violation", except when Congress establishes an alternative remedy and indicates, either explicitly or implicitly, "that the Court's power should not be exercised".[8] Without such an indication from Congress, the federal courts must fashion damage remedies for constitutional violations as would any common law court, "paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation".[9]

The special factor in *Bush* that counselled hesitation was the plaintiff's employment relationship with the federal government, which was governed by a comprehensive remedial scheme: the federal civil service laws. The Court deferred to the "considerable familiarity [of Congress] with balancing governmental efficiency and the rights of employees", and also the ability of Congress to "inform itself through factfinding procedures that are not available to the courts".[10]

Unlike the plaintiff in *Bush,* Charlene McCollum is not protected by the civil service laws. Her employment status is, nonetheless, governed by a comprehensive procedural and substantive system that provides an adequate remedy. In creating the USPS, Congress expressly authorized "final and binding grievance provisions in Postal Service collective bargaining agreements, 39 U.S.C. § 1206(b)".[11] The collective bargaining agreement that governs Charlene McCollum's employment with the USPS establishes a multi-step system for processing employee grievances. The plaintiff's union has a duty to represent her fairly in pursuing her claims against the USPS.

The plaintiff argues that the collective bargaining agreement is an inadequate substitute for the civil service laws. In particular, she contends that the grievance system is insufficient protection for an employee because the employee has a right to file only an initial complaint. The Union then decides whether to appeal an adverse decision by the USPS.

■ It is clear that the grievance system is different from, and may provide less protection than, the civil service remedies. This fact is irrelevant, however. Our only concern is whether the grievance system "offers an adequate measure of relief".[12] The Union's authority to decide whether to appeal an adverse ruling is not dispositive because the Union has a duty to represent employees fairly and liability will attach should it fail to do so. We agree with the Seventh Circuit's decision in *Ellis v. United States Postal Service,*[13] in which the court concluded that it was unable to discern "how the means for redressing grievances in the Postal Service are markedly less adequate or less comprehensive than the civil service remedies in *Bush*".[14] The court held that the multi-step grievance procedure is constitutionally sufficient. Charlene McCollum had access to this system and, therefore, she may not maintain a constitutional tort action against her supervisor, Postmaster Howard.

### B. *Tony McCollum*

Tony McCollum asserts that the USPS tortiously violated his rights protected by the First and Fifth Amendments. The district court dismissed this *Bivens*-type claim for lack of subject matter jurisdiction. We affirm.

---

8. *Bush v. Lucas,* 462 U.S. at 378, 103 S.Ct. at 2411, 76 L.Ed.2d 648 (1983).

9. *Id.*

10. *Id.* at 389, 103 S.Ct. at 2417.

11. *Ellis v. United States Postal Service,* 784 F.2d 835, 839 (7th Cir.1986).

12. *Heaney v. United States Veterans Administration,* 756 F.2d 1215, 1221 (5th Cir.1985).

13. 784 F.2d 835 (7th Cir.1986).

14. *Id.* at 839.

*Bivens* authorizes suits against individual federal officials, not against the United States.[15] Only if the United States has waived its sovereign immunity in this case may Tony McCollum's constitutional claims against the USPS for damages be adjudicated. The plaintiff points to 39 U.S.C. § 401(1), which authorizes the USPS to "sue and be sued in its own name", and argues that this provision constitutes a waiver of sovereign immunity. The plaintiff is correct, but his analysis is not complete because 39 U.S.C. § 409(c) limits the waiver of sovereign immunity found in 39 U.S.C. § 401(1). Section 409(c) applies the Federal Tort Claims Act (FTCA) to the Postal Service.[16] Any tort claim against the USPS must be cognizable under the FTCA.

Tony McCollum alleges that the USPS committed constitutional torts. Federal constitutional torts, however, are not within the scope of the FTCA. That statute waives the sovereign immunity of the United States for the tortious acts of its employees only "if such torts committed in the employ of a private person would have given rise to liability under state law ..."[17] By definition, constitutional torts are not based on state law. As the Second Circuit concluded, in holding that the federal courts have no subject matter jurisdiction over claims alleging constitutional torts by the USPS, the "waiver of sovereign immunity contained in [the FTCA] is limited to a tort cause of action cognizable under state law".[18] The district court had no subject matter jurisdiction over Tony McCollum's claim against the USPS; therefore, it was properly dismissed.

## III. TITLE VII CLAIMS

The three plaintiffs in this case each allege that they were discriminated against by the defendant Bolger on the basis of sex.[19] The burden of proof in a Title VII case is well established. A female employee proves a case of sexually discriminatory treatment by showing that she was treated less favorably than others because of her sex.[20] The same test is applied to a male employee. In *McDonnell Douglas Corp. v. Green*,[21] the Supreme Court propounded a three-part model of proof for claims of disparate treatment. First, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff should establish this prima facie case, the burden of producing evidence shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse personnel action.[22] Third, if the defendant carries this burden, the plaintiff must then show that the defendant's reason was pretextual. The ultimate burden of persuasion always remains with the plaintiff, who must prove that she was the "victim of intentional discrimination".[23]

The district court held that Tony McCollum had failed to make a prima facie case. The court further held that Charlene and Timothy McCollum had failed to make prima facie cases and that the defendant had offered legitimate, nondiscriminatory reasons for his actions, which the plaintiffs had failed to show were pretextual.

15. *Bivens,* 403 U.S. at 397, 91 S.Ct. at 2005.

16. This section reads:
 The provisions of chapter 171 and all other provisions of title 28 relating to tort claims shall apply to tort claims arising out of activities of the Postal Service.

17. *Birnbaum v. United States,* 588 F.2d 319, 322 (2d Cir.1978).

18. *Keene Corp. v. United States,* 700 F.2d 836, 845 n. 13 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

19. Charlene McCollum has dropped her age discrimination claim.

20. *See Zahorik v. Cornell University,* 729 F.2d 85, 91 (2d Cir.1984).

21. 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

22. *Id.* at 802, 93 S.Ct. at 1824.

23. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

## A. *Charlene McCollum*

Charlene McCollum argues that she was the victim of sex discrimination on two occasions: first, when her route was reduced in length and her pay cut; and second, when she was removed from the USPS. Her removal was converted to a 78-day suspension and will be treated as a suspension for purposes of this lawsuit.

1. *Route Reduction.* The following facts were proved at the trial. Two postal routes in Rome, Georgia were over-burdened according to USPS guidelines. Charlene McCollum handled one of the routes and a male carrier handled the other. Mrs. McCollum does not dispute that both routes were overburdened and should have been reduced. She objects, however, to the cut in pay that accompanied the reduction in the length of her route. Her pay, after the route reduction, was less than the pay of four other male letter carriers whose routes had "box factors" [24] and mileage less than the "box factor" and mileage of Mrs. McCollum's route. High mileage and a high "box factor" indicate that a route is difficult and the carrier's pay should be higher than usual. One of the four men was the carrier whose route was reduced at the same time that Mrs. McCollum's route was cut.

The district court concluded that Mrs. McCollum had failed to make a prima facie showing of discrimination, a conclusion with which we disagree. The facts outlined above were sufficient to establish a prima facie case. Proof of a prima facie case, however, is not proof of discrimination. It is merely evidence of disparate treatment from which the trier of fact may infer a causal connection between an adverse action and the alleged basis for discrimination—in this case, sex.[25] The plaintiff proved that she was treated differently from male letter carriers. This raises an inference of discrimination, which the defendant must rebut with evidence of a legitimate, nondiscriminatory reason for his actions.

As the district court properly concluded, the defendant articulated a legitimate, nondiscriminatory reason for the treatment of Mrs. McCollum. There was undisputed testimony by an official of the Union that, according to the USPS national practice, the plaintiff's route should have been reduced even further. Postmaster Howard requested, however, that the route be reduced as little as possible so as to avoid cutting the plaintiff's pay significantly. Furthermore, the Union official testified that there are a number of criteria used by the USPS in calculating a letter carrier's pay grade in addition to her route's "box factor" and mileage. The plaintiff's route had fewer boxes and was estimated to take less time to complete than the routes of three of the four male carriers who made more money than she. The male letter carrier whose route was reduced at the same time as Mrs. McCollum's received only $15 more per week than she did. His route had a higher time factor and many more boxes. Another male letter carrier made the same amount of money as the plaintiff, even though his "box factor" was significantly higher. We agree with the district court that there "is no evidence Mrs. McCollum drew less than she was entitled to based upon her route after it was reduced in an entirely proper manner".

2. *Suspension.* Mrs. McCollum contends that she was suspended for 78 days on account of her sex. She asserts that her punishment was disproportionate to her alleged offenses, which can be summarized as failing to follow instructions from a supervisor. The district court found that she was treated more harshly than similarly situated male employees at the Rome Post Office. The record supports this finding and we conclude that this constitutes proof of a prima facie case of

---

24. The "box factor" is a figure based on the volume of mail delivered and number of boxes served.

25. *See Furnco Construction Corp. v. Waters,* 438 U.S. 567, 579–80, 98 S.Ct. 2943, 2950–52, 57 L.Ed.2d 957 (1978).

sex discrimination. The record makes clear, however, that the reason for this disparate treatment was not sex discrimination. Mrs. McCollum had a bad relationship with her supervisor, Postmaster Howard, and she also disagreed with her superiors as to how her job should be performed. Competent witnesses testified that the plaintiff did not get along with her supervisor and was "a combative, hostile, rude, vindictive and dictatorial employee". These factors, in addition to her failure to follow instructions were the reasons for her lengthy suspension.

■■■■■ Title VII prohibits discrimination; it "is not a shield against harsh treatment at the work place".[26] Personal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII.[27] The plaintiff cannot turn a personal feud into a sex discrimination case by accusation. There was no proof offered to show that Postmaster Howard was prejudiced against the plaintiff or any other woman on account of sex. Mrs. McCollum failed to carry her ultimate burden of persuasion.

### B. Tony McCollum

■■■■■ Tony McCollum argues that the rescheduling of his work week in May 1981 and the letter of warning he received in the same month were the result of sex discrimination and also in retaliation for representing his mother in pursuing her discrimination claim against the USPS. Retaliation for participation in Title VII proceeding is, of course, prohibited.[28] To establish a case of retaliation, a plaintiff must prove that (1) there was a statutorily protected participation, (2) an adverse employment action occurred, and (3) there was a causal link between the participation and the adverse employment action.[29] The district court concluded that Tony McCollum had failed to prove a prima facie case of retaliation or sex discrimination.

1. *Rescheduled work week.* Tony McCollum replaced his mother as the carrier for her route after she was suspended in April 1981. For the first several weeks, he worked six days a week and received overtime pay for his work on Saturdays. In late May, Postmaster Howard decided to reduce overtime expenses at the Rome Post Office by assigning a substitute carrier to replace Tony McCollum on Wednesdays. Mr. McCollum thus lost a full day of overtime pay and was unable to enjoy two-day weekends.

Mr. McCollum alleges that the rescheduling of his work week by Postmaster Howard was motivated by sex discrimination. Two female carriers were allowed to work for longer periods of time without a substitute and, therefore, were able to earn more overtime pay. One of the two women did receive a substitute, after three and one-half months, and the substitute worked on Saturdays. Another female carrier who served without a substitute for only a short period also received a substitute on Saturdays.

■■■■■ Even if these facts were sufficient to create an inference of discrimination against Tony McCollum, the defendant rebutted this inference by articulating nondiscriminatory reasons for the rescheduling of Mr. McCollum's work week. Postmaster Howard wanted to reduce overtime costs. A substitute carrier who was familiar with Mr. McCollum's route was assigned to work on Wednesdays because she could not work on Saturdays.

■■■■■ The rescheduling of McCollum's work week was not done in retaliation for his participation in his mother's Title VII suit. The evidence showed that his supervisor, Postmaster Howard, did not know that Mr. McCollum was representing his mother. The rescheduling could not have been retaliatory and, therefore, the defend-

---

26. *Jackson v. City of Killeen,* 654 F.2d 1181, 1186 (5th Cir.1981).

27. *See Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984).

28. *See* 42 U.S.C. § 2000e–3(a).

29. *Canino v. United States Equal Employment Opportunity Commission,* 707 F.2d 468, 471 (11th Cir.1983).

ant failed to prove a prima facie case. Also, the defendant advanced a legitimate reason for the rescheduling, which would overcome a prima facie case.

2. *Warning Letter.* In mid-May 1980, Postmaster Howard notified Tony McCollum verbally and in a certified letter that a substitute carrier, Jane Green, would work for him on Wednesdays beginning the next week and that he should not report for work on those days. Mr. McCollum refused to accept the certified letter, which was delivered to him at work and was clearly marked as an official USPS notice. Tony McCollum called Jane Green the night before her first day as a substitute for him. He testified that he told Ms. Green that he would appear for work the following day, but that she should deliver the mail on his route. Ms. Green testified that Mr. McCollum told her not to report for work the next day. Mr. McCollum appeared for work on Wednesday, May 20, 1981 and was issued a letter of warning for failure to follow instructions.

 Tony McCollum did not offer any proof of a similarly situated female who was treated less favorably than he. Thus he did not prove a prima facie case. Furthermore, the defendant had a legitimate reason for issuing the warning letter: Mr. McCollum's failure to follow instructions. The letter was not issued in retaliation for Mr. McCollum's representation of his mother because Postmaster Howard was unaware of this activity.

If there was any other reason for the actions against Mr. McCollum by Postmaster Howard, it was the animosity between the McCollum family and Howard. As we stated above, personal dislike is not sex discrimination and is not proscribed by Title VII.

## C. *Timothy McCollum*

 Timothy McCollum applied for and was qualified for the position of substitute rural carrier. He was not hired and a woman was selected for the position. This is sufficient proof of a prima facie case of discrimination. Beyond this limited proof, however, Timothy McCollum has failed to show that Postmaster Howard discriminated against him on the basis of sex.

 Mr. McCollum's sister, Vickie Dorsey, applied for the same position at the same time as her brother. Both had almost identical records and test scores. Neither was hired. The evidence showed that Postmaster Howard did not want to hire any more members of the McCollum family. In addition to his antipathy toward the family, he thought it would create an appearance of impropriety if three or four members of the same family should work as letter carriers in the same post office. Also, there was evidence suggesting that Mr. McCollum and his sister made false statements on their applications by denying that any of their relatives worked for the federal government. At the time they filed their applications, both of their parents and their brother were employed by the USPS. These reasons were more than adequate to justify rejecting Timothy McCollum's application.

The most persuasive evidence proving that Timothy McCollum was not the victim of sex discrimination is that Postmaster Howard offered the position to three men, all of whom declined to accept, before offering the job to a woman. Mr. McCollum has failed to prove a case of sex discrimination.

## IV. UNFAIR REPRESENTATION CLAIMS

 Charlene and Tony McCollum failed to prove sex discrimination. Their only recourse for redress of improper treatment based on causes other than discrimination was utilization of the grievance system provided by the National Agreement between the USPS and the Union. As rural carriers, they are entitled to the protection of the system whether or not they are members of the Union. The Union has a duty to represent them in employment matters involving the USPS and cannot arbitrarily refuse to process a meritorious

grievance nor handle it perfunctorily.[30] The Union need not pursue a matter merely because an employee wishes it to do so. Yet if the Union's refusal to represent an employee is motivated by bad faith or hostility toward the employee, the Union has breached its duty of fair representation.

Charlene and Tony McCollum allege that USPS breached its collective bargaining agreement and that the Union unfairly represented them. To succeed, they must prove: (1) a violation of the collective bargaining agreement; (2) a meritorious grievance; and (3) arbitrary or bad faith representation by the Union.[31] The only incidents about which they can complain are those that occurred within the six months prior to the date they filed suit.[32] The district court found no merit in the plaintiffs' claims.

### A. *Charlene McCollum*

Charlene McCollum has one grievance that she complains was not processed fairly by the Union. A fellow USPS employee dented Mrs. McCollum's car in the parking lot of the Rome Post Office. Mrs. McCollum was upset by this incident and voiced her displeasure. Another USPS employee made some comments to her about the situation, which Mrs. McCollum said amounted to harrassment. She complained to the Union and demanded that the USPS stop her co-worker from harrassing her. The local steward for the Union filed a grievance, but later dropped it.

 Mrs. McCollum's claim is without merit for two reasons. First, the USPS has no obligation to monitor the personal relationship between two of its employees. Second, the Union did not breach its duty of fair representation. The steward, John Chandler, investigated the grievance and determined, with just cause, that it lacked merit. The plaintiff asserts that her bad relationship with the previous steward, John King, somehow prejudiced her dealings with the current steward, John Chandler. There was no credible evidence, however, that any ill feelings affected the processing of Mrs. McCollum's grievance. Her complaint simply lacked merit.

### B. *Tony McCollum*

Tony McCollum cites three incidents that he alleges gave rise to valid grievances, which the Union did not pursue. Each was minor and did not involve a breach by the USPS of its collective bargaining agreement. The Union investigated each claim and decided not to pursue them based on their lack of merit. There was no breach of the Union's duty of fair representation.

### V. CONCLUSION

Winding our dreary way through these bitter personal animosities we finally come to a close. The district court properly granted Postmaster Howard's motion for summary judgment and the USPS's motion to dismiss. We also agree with the district court's disposition of the plaintiffs' discrimination claims. The plaintiffs in this case would have us believe that one individual, Postmaster Howard, discriminated against Charlene McCollum because she was a woman and against her sons because they were men. The contradiction is obvious. The evidence points to a different explanation. The McCollums did not get along with Howard. They now seek to convert any adverse actions against them by him into discrimination claims. Despite the fact that the actions by Howard were based on legitimate reasons, the plaintiffs allege sex discrimination. Their arguments do not withstand scrutiny of the record. The McCollums were not the victims of sex discrimination or of unfair representation by the Union. The judgment of the district court is, therefore, AFFIRMED.

---

**30.** *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

**31.** *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983).

**32.** *Id.* at 154–55, 103 S.Ct. at 2285–86.