**Bonita FREEMAN, Plaintiff,**

v.

**CONTINENTAL TECHNICAL SERVICES, INC., Defendant.**

**No. 1:86–cv–1936–CAM.**

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 28, 1988.

John Lansing Kimmey, III and Germano & Kimmey, Atlanta, Ga., for Bonita Freeman, plaintiff.

Nancy H. Murphy, Office of Donald B. Walker, Atlanta, Ga., for Continental Technical Services, Inc., defendant.

### ORDER

MOYE, Senior District Judge.

The above-styled case is before the Court on appeal by the defendant, Continental Technical Services, Inc. ("Continental"), from the magistrate's entry of judgment against the appellant, Continental. The magistrate found that the appellant had unlawfully discriminated against the appellee, Bonita Freeman ("Freeman"), on the basis of sex pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. The magistrate awarded to the appellee one year of back pay and prejudgment interest, as well as, attorneys' fees as the prevailing party in a Title VII action. 42 U.S.C. § 2000e–5(k). The magistrate also entered a judgment in favor of the defendant on its counterclaim and directed that the appropriate amount be offset against the plaintiff's judgment.

The issues presented on appeal are as follows:

1) Is Title VII applicable to this case?

2) If Title VII is applicable, was discrimination proven?

3) If Title VII is applicable, is the award of back pay correct?

### I.  SUMMARY OF THE MAGISTRATE'S FINDINGS OF FACT

The Magistrate's findings of fact, relevant to the discussion of the law which follows them, may be fairly summarized as follows:

The appellee applied for a job as a clerk-typist at Continental's Augusta office in November, 1984. Soon thereafter, Freeman began having sexual relations with a Mr. Dunlap, president and part owner of Continental. On January 7, 1985, Freeman began working for Continental in Augusta.

The magistrate found that Ms. Freeman was a poor employee. She was not a good typist and the quality of her work was poor. Freeman also had a poor attendance record and appeared to be unable to perform the functions of her job. The Magistrate found that the reason Continental continued to employ her was due to her ongoing personal relationship with her supervisor, Continental's president, Mr. Dunlap.

During Freeman's employment, she and Dunlap had continuing sexual relations de-

spite the fact that Mr. Dunlap was married. They stayed together in hotels in Augusta. Freeman also visited Dunlap in Atlanta, and they took a trip together to Savannah.

In April 1985, Freeman told Dunlap that she was pregnant and that she was going to terminate the pregnancy. Dunlap reacted as if he thought she was joking and then asked her who the father was. He told her he would loan her the money to pay for the abortion.

On June 4, 1985, Freeman informed Dunlap that she had changed her mind and was planning to have the child. Freeman did not return to work until Monday, June 10, 1985, but made no attempt to contact Continental during her absence other than her conversation with Dunlap on June 4, 1985, concerning her decision to keep the child. When she returned she found that the office had been closed.

On Friday, June 7, 1985, Dunlap had ordered the Augusta office closed and instructed its only other employee, an account executive, to report for work in Atlanta on June 10, 1985. Freeman was not transferred to the Atlanta office. She was terminated. The magistrate found that there was not a clerical position available in the Atlanta office or any other position available in the company for which the plaintiff would qualify. Therefore, the magistrate did not order Continental to reinstate Freeman in her previous position or in any other position with the company.

Dunlap produced evidence that the Augusta office was closed because it was losing money. However, the magistrate found that the office was closed, at that particular point in time, due to Freeman's revelation to Dunlap that she was going to keep the baby, which she contended was his. The magistrate found that the plaintiff was terminated for an unlawfully discriminatory reason. He found that she was terminated because of *her personal involvement with Dunlap, her resulting pregnancy, and her decision to keep the baby.*

## II. DISCUSSION

■ A finding of intentional discrimination is a finding of fact. A magistrate's finding of fact may not be reversed unless the magistrate's finding was clearly erroneous. Therefore, the magistrate's finding of intentional discrimination in this case will be upheld by this Court unless it is found to be clearly erroneous. *See, Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1185 (11th Cir.1984).

Having reviewed the record, the Court finds that the magistrate's underlying findings of fact are not clearly erroneous. Assuming that Title VII was properly applied, the magistrate had adequate evidence to support a finding that unlawful discrimination existed, as well as, the award of approximately one year's back pay. However, the Court finds that the magistrate improperly applied Title VII, and thus the ultimate finding of intentional unlawful discrimination based on sex on the part of Continental is clearly erroneous.

The magistrate noted on page 10 of the order signed on February 22, 1988 that:

There could be some argument that Title VII would not apply in this case where there is no allegation of sexual harassment. The reason for termination here was the personal involvement of Dunlap with Freeman. *See DeCintio v. Westchester County Medical Center,* 807 F.2d 304 (2d. Cir.1986) . . . [emphasis added]

In *DeCintio,* the Second Circuit held that Title VII mandates that similarly situated employees are not to be treated differently solely because they differ with respect to race, color, religion, sex, or national origin. *Id.* 807 F.2d at 306, *citing, Trans World Airlines v. Hardison,* 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977). Therefore, the court held that: "The proscribed differentiation under Title VII, therefore, must be a distinction based on a person's sex, not on his or her sexual affiliations." *Id.* 807 F.2d at 306–307. The court further held: "We can adduce no justification for defining 'sex,' for Title VII purposes, so broadly as to include an ongoing, voluntary, romantic engagement." *Id.* 807 F.2d at 307.

■ The facts of the *DeCintio* case are clearly distinguishable from those in the

present case. However, applying the Second Circuit's formulation of the law in *De-Cintio* to the facts of this case, this Court finds that a case for unlawful discrimination based on sex under Title VII has not been proven.[1] The magistrate found that the reason for Freeman's termination involved problems in her intimate personal relationship with Dunlap. There is nothing in the magistrate's findings to indicate that this relationship was not voluntary, and it was certainly ongoing and romantic.

The plaintiff was not terminated because she was a woman, but because of her sexual relationship with Dunlap and the consequences thereof.[2] The fact that Freeman's pregnancy was a contributing factor in her termination does not change the application of Title VII. Freeman was not terminated solely because she was pregnant, but because she was pregnant with a child which she claimed to be Dunlap's and which she planned to keep. The consequences of her behavior in connection with this event and her decision, at one point, to keep the child despite the personal circumstances involved contributed to her termination. The magistrate's underlying findings of fact do not support a finding that Continental was guilty of discriminatory practices against employees because they were pregnant women.

The Eleventh Circuit has not ruled on a fact situation similar to the one presented in the case at bar. However, in *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir.1986), the court held: "Personal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a sex discrimination case by accusation." The court's articulation of the law in *McCollum*

is clearly applicable to the present case. Freeman was terminated because of personal problems she was having with Dunlap and the personal animosity arising therefrom.

 It can be argued that Dunlap did not have a "legitimate" reason for terminating Freeman, but Title VII does not require an employer to have good cause for its personnel decisions. "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix*, 738 F.2d at 1187. The transfer, demotion, or discharge of an employee for sexual or sex-related behavior does not constitute unlawful sex discrimination under Title VII. *Grayson v. Wickes Corp.*, 450 F.Supp. 1112, 19 F.E.P. 1519 (N.D.1978), *aff'd*, 607 F.2d 1194 (7th Cir.).

## III. CONCLUSION

For the reasons discussed above, the magistrate's decision finding that the defendant unlawfully discriminated against the plaintiff based on sex under Title VII and the award of attorneys' fees and one year's back pay to the plaintiff is REVERSED. The clerk is DIRECTED to enter judgment for the defendant on the complaint.

SO ORDERED.

---

1. The appellant has suggested that Freeman's claims most closely resemble "sexual harassment" because they arise from the personal relationship between Dunlap and Freeman. The Court makes no comment on this assertion, but notes that Title VII prohibits "sexual harassment" in the work place. *See, Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). However, the plaintiff did not allege sexual harassment, and the findings of the magistrate do not appear to support a claim for harassment.

2. The following illustration may shed light on the Court's reasoning. It would be possible for a male supervisor to have an intimate homosexual relationship with a lower level male employee. If subsequent events, such as the employee's threat to blatantly expose the relationship to the supervisor's wife, friends and subordinates, caused the supervisor to terminate the employee, it would not be because the employee was a male.