Joseph SUCCAR, Plaintiff,

v.

DADE COUNTY SCHOOL BOARD, Defendant.

No. 97–3284–CIV.

United States District Court,
S.D. Florida,
Miami Division.

Aug. 24, 1999.

Leslie Holland, Miami, FL, for plaintiff.

Madelyn P. Schere, Miami, FL, for defendant.

### ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

SEITZ, District Judge.

THIS CAUSE is before the Court on Defendant's Motion for Summary Final Judgment, filed December 15, 1998 [D.E. No. 23], and Plaintiff's Motion for Summary Judgment, filed January 22, 1999 [D.E. No. 38].

### UNDISPUTED MATERIAL FACTS

This is a case of alleged disparate treatment on account of sex and alleged hostile work environment sexual harassment by a co-worker, brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

In 1995, Defendant hired Plaintiff Joseph Succar as a full-time Exceptional Student Education teacher at Booker T. Washington Middle School. Following an open-house event in October 1995, Plaintiff, who is married, began a consensual sexual affair with a fellow teacher at the school, Clemencia Lorenz, which lasted approximately one year. Shortly after the commencement of their relationship, Plaintiff moved in with Ms. Lorenz and her teenage son for approximately two to three months. During this time, they took a vacation together in the Florida Keys. Plaintiff and Ms. Lorenz exchanged Christmas gifts, and Plaintiff brought her flowers and love poems. In January 1996, Plaintiff moved into an efficiency, but continued to see Ms. Lorenz. At some point during the relationship, Ms. Lorenz began making threatening phone calls to Plaintiff's wife, and even uttered obscenities at Plaintiff's minor son, as a result of which Plaintiff's wife obtained a restraining order under Florida's "Protection Against Repeat Violence" statute. At some point during 1996, the relationship between Plaintiff and Ms. Lorenz began to sour, even though they continued to see each other.

On November 18, 1996, the school principal, Irvin Grice, held a Conference-for-the Record session with Plaintiff and his union representative because Plaintiff had left school without permission a couple of times, leaving his students unsupervised. During the conference, Plaintiff mentioned to his union representative that Ms. Lorenz had been sexually harassing him, but the union representative prevented Plaintiff from discussing it. No official complaint was made to Principal Grice at that time.

Following the November 18th conference, Ms. Lorenz learned from the union representative that Plaintiff was trying to blame her for his problems. On November 22, 1996, Plaintiff contacted the school district's Equal Educational and Employment Opportunity Office (the "EEEO"). His case was logged in and he was sent a package of materials.[1]

In December 1996, Plaintiff finally broke off the relationship with Ms. Lorenz. Following the break-up, Ms. Lorenz began to harass Plaintiff by making verbal threats (such as she would have students falsely accuse Plaintiff of sexually molesting them), using foul language, leaving notes on his car windshield, and embarrassing Plaintiff in front of his students and other teachers by criticizing him.[2] At on point, when she had gotten Plaintiff to come to her room after school hours under the pretext that she had some of his belongings in her room for him to pick up, Ms. Lorenz allegedly grabbed Plaintiff as he tried to leave and said "you are not going anywhere." As Plaintiff pulled away, his shirt ripped.[3] Ms. Lorenz then began hitting and kicking Plaintiff.[4]

On January 21, 1997, a confrontation between Plaintiff and Ms. Lorenz occurred wherein Ms. Lorenz appeared at Plaintiff's classroom while class was in session and

---

1. It is undisputed that the School Board of Dade County has in its personnel rules both a non-discrimination and an equal opportunity policy, which include a complaint procedure for employees filing discrimination or harassment charges.

2. Although Plaintiff asserts in his Complaint and in his factual statement in opposition to the summary judgment motion that, on at least one occasion, Ms. Lorenz had a student deliver to him a sexually suggestive note written in Spanish, Plaintiff has failed to provide any competent evidence supporting this allegation. Indeed, the record cites provided by Plaintiff do not support his allegation that the

note was "sexually suggestive" and no copy of the note (or its translation, if it was indeed in Spanish) has been provided to the Court.

3. Ms. Lorenz denies ripping his shirt.

4. Although Plaintiff describes many other incidents involving Ms. Lorenz that he believes were harassing in nature (i.e., threatening phone calls at home and other "stalking"-type behavior), these events took place outside work hours and off the school premises. Based upon its analysis below, the Court finds that these incidents are not relevant to the issue of hostile work environment and therefore they are not recounted herein.

began yelling at him and using profanity in front of the students. The students complained to Assistant Principal Jean Hawa regarding Ms. Lorenz's conduct. Hawa advised Principal Grice of the complaints. On that same date, Plaintiff filed a written complaint with Principal Grice about the incident, complaining that Ms. Lorenz was harassing him. Plaintiff concedes that this was the first written notice Plaintiff provided Principal Grice regarding his problems with Ms. Lorenz. Plaintiff asserts, however, that the week before the incident, he had verbally complained to the Principal. On January 22, 1997, Ms. Lorenz provided her written complaint regarding the incident on the previous day. In her response, Ms. Lorenz complained that Plaintiff was making sexually derogatory remarks about her to his students and that she went to his classroom to confront him about it. The Principal thereafter had separate conferences with Plaintiff and Ms. Lorenz, wherein both admitted their romantic involvement and the fact that they had previously lived together. Principal Grice verbally reprimanded them for behaving unprofessionally and told them that they were to keep their personal problems out of the workplace. Both Plaintiff and Ms. Lorenz, however, feel that nothing was ever done to rectify the situation.[5]

On January 30, 1997, Plaintiff informed Assistant Principal Hawa that a student had approached him and stated that Ms. Lorenz had commented how Plaintiff would always walk away quickly when she approached to make it look like she was following him and how Plaintiff would not enter the teachers' lounge if he saw Ms. Lorenz in it. Plaintiff also inquired of Assistant Principal Hawa as to the status of the other students' complaints to her and his complaint to Principal Grice. Because personnel issues are solely the responsibility of the Principal, Hawa had no knowledge as to the status.

On February 24, 1997, the EEEO received Plaintiff's formal complaint.[6] On February 25, 1997, the Compliance Director in the EEEEO, Rafael Urrutia, assigned investigator Marta Fernandez to the case. By memorandum dated February 28, 1997, from Assistant Superintendent Freddie Woodson, Principal Grice was notified of Plaintiff's complaint of sexual harassment and that an investigation into Plaintiff's claim would ensue. During her investigation, Ms. Fernandez interviewed Principal Grice, Assistant Principal Hawa, the union representative, a fellow teacher, and Ms. Lorenz.

In March 1997, another incident occurred between Plaintiff and Ms. Lorenz. There, Plaintiff spotted Ms. Lorenz on his floor of the school during class hours walking toward him. Plaintiff stepped into a nearby class room (in which another teacher was in the middle of a class session) to avoid her and used his cellular phone to notify Principal Grice that Ms. Lorenz was after him and to send someone. The Principal said he would send somebody. A couple of minutes later, the students in the classroom said Ms. Lorenz was gone. Af-

5. Plaintiff asserts that Ms. Lorenz was never disciplined for her conduct, citing to the deposition taken of Ms. Lorenz at pages 71–72. Plaintiff has failed to file those pages in the record, however, and the Court therefore has not considered this allegation.

6. Plaintiff asserts he went to the EEEO because, in his opinion, Principal Grice did not take any action on Plaintiff's January 21, 1997, memorandum—conduct which is contrary to School Board policy. Pursuant to School Board policy, complaints of discrimination or harassment must first be registered with the school principal. If the complaint remains unresolved after five (5) business

days, the principal must automatically forward it to the next supervisory level. Subsequently, if the employee is not satisfied with the handling of his or her complaint at the school level, the employee could then file with the EEEO. The Executive Director of the EEEO has the authority to make a final determination on such complaints. Employees can appeal determinations by the EEEO to the Superintendent and can also file a charge with the federal Equal Opportunity Employment Commission. In this case, however, it is clear from Principal Grice's testimony that, following his conferences with Plaintiff and Ms. Lorenz, he thought the matter resolved.

ter a few more minutes, Plaintiff left the classroom. In leaving, he spotted a security guard taking a break and asked him if anyone had sent him after Ms. Lorenz. The guard replied no. Plaintiff then left school grounds (without authorization) and went to the EEEO to complain.

Plaintiff asserts that, while he was at the EEEO, he complained to an administrator, Terrence Garner, that he was afraid of Ms. Lorenz, and that she had hit him in school, torn his clothes, and humiliated him in front of students. At this time, Mr. Garner allegedly replied, "Well, she is just a little woman and you are a big man, and you can deal with it, and the principal is going to assure you that nothing is going to happen."[7] Plaintiff apparently then met with Director Urrutia, during which meeting Principal Grice was contacted by telephone. Principal Grice assured Plaintiff that he had told Ms. Lorenz to stay away from Plaintiff and that the school would be a safe place for him. Director Urrutia and Investigator Fernandez counseled Plaintiff to return to the school and told him that the investigation would take from three to twelve weeks.

Subsequently, after reviewing all of the information gathered by the investigator, Director Urrutia determined that there was insufficient evidence to substantiate discrimination on the basis of gender, that Plaintiff's problem arose out a romance turned sour, and that both Plaintiff and Ms. Lorenz were equally at fault for retal-

iatory conduct toward each other. By letter dated May 13, 1997, Plaintiff was notified by Assistant Superintendent Woodson of the outcome of the investigation.

Subsequently, Plaintiff requested and was granted a transfer to another school for the 1997/98 school year. Plaintiff concedes that the harassment only lasted until May 1997. Plaintiff also concedes that Principal Grice immediately approved Plaintiff's transfer request.

It is undisputed that Ms. Lorenz has previously exhibited hostile, abusive and intimidating conduct, regardless of gender, toward other teachers, security personnel, staff, and students, including complaints of battery, racial epithets, and provocative language. Plaintiff even concedes that Ms. Lorenz has a "volatile" personality.

### ANALYSIS

Plaintiff claims that he was subjected to a sexually hostile work environment for which the Defendant failed to take prompt remedial action, and that he was also subjected to disparate treatment on account of his gender. The Court addresses each claim in turn.

1. *Hostile Work Environment Sexual Harassment.*

■ Plaintiff first asserts that Ms. Lorenz's conduct created a sexually hostile work environment, and that the Defendant failed to take action to remedy his complaints about that conduct.[8] To establish a

---

7. The record is silent as to what role, if any, Mr. Garner played in the investigation of Plaintiff's complaint by Investigator Fernandez or in the final determination made by Director Urrutia. Even more interesting to the Court, however, is the fact that, in his deposition taken July 28, 1998, Plaintiff states that an otherwise unidentified person by the name of "Goonen" made the alleged comment. In his subsequent affidavit, dated January 25, 1999, Plaintiff attributes the alleged statement to Garner. In his Complaint, however, filed October 10, 1997, Plaintiff alleges that the Principal made the comment.

8. At the outset, the Court finds that, to the extent Plaintiff is seeking relief for the harassing phone calls at home and for "stalking"

behavior outside the workplace, summary judgment in favor of the employer is warranted. Under the particular facts of this case, the Court knows of no obligation upon the employer to monitor the activities of its employees outside of the workplace. Indeed, the clear intent of Title VII is to combat discrimination *in the workplace. See Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) (holding that Title VII was designed to assure equality of employment opportunities); *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982) (recognizing that "an employer violates Title VII simply by creating or condoning an environment *at the workplace* which significantly and adversely affects an employee.") (emphasis added). *See also Fred v. Wackenhut Corp.,*

claim of hostile work environment based upon gender, the Plaintiff must show:

(1) That he belongs to a protected group;

(2) That he was subjected to unwelcome harassment;

(3) That the harassment complained of was based on sex;

(4) That the harassment complained of affected a term, condition, or privilege of employment; and

(5) That the Defendant knew or should have known of the harassment in question and failed to take prompt remedial action.

*Henson,* 682 F.2d at 903–905. There is no dispute that Plaintiff has met the first two elements. The critical issue for the Court to resolve is whether Ms. Lorenz's harassment of Plaintiff was based on his gender. The Court concludes that it was not.

 It is axiomatic that sexual harassment is conduct that would not occur but for the sex of the employee/recipient. *Bolden v. PRC, Inc.,* 43 F.3d 545, 551 (10th Cir.1994), *cert. denied,* 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995). "General harassment if not ... sexual is not actionable." *Id. See also Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998) ("Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at 'discriminat[ion] ... because of ... sex.' We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations."); *DeCintio v. Westchester County Med. Ctr.,* 807 F.2d 304, 306–07 (2d Cir.1986), *cert. denied,* 484 U.S. 825, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987) (holding that the proscribed treatment must be based on a person's sex and not their sexual affiliations). Indeed, as recognized

by the Eleventh Circuit, Title VII " 'is not a shield against harsh treatment at the work place.' Personal animosity is not the equivalent of sex discrimination and is not proscribed by Title VII. The plaintiff cannot turn a personal feud into a sex discrimination case by accusation." *McCollum v. Bolger,* 794 F.2d 602, 610 (11th Cir.1986) (internal citation omitted), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987). And, while physical and verbal abuse of a non-sexual nature (i.e., conduct that is not overtly sexually oriented) may nevertheless constitute sexual harassment, such conduct must still be shown to have occurred because of the recipient's membership in a protected class (i.e., "but for her womanhood, the harassment would not have occurred."). *McKinney v. Dole,* 765 F.2d 1129, 1138 (D.C.Cir.1985) (internal citation and quotation marks omitted). *See also Fred,* 860 F.Supp. at 1404 (stating that " 'A female worker need not be propositioned, touched offensively, or harassed by sexual innuendo ... hostility toward women because they are women can obviously result from conduct other than explicit sexual advances.' ") (citation omitted).

 With this backdrop, the Court now turns to the facts of the instant case. Here, we have the classic setting of a love affair gone awry, with Ms. Lorenz (taking the facts in the light most favorable to Plaintiff) playing the part of the proverbial jilted lover attempting to seek retribution. As such, the Court finds that Ms. Lorenz's harassment arises not out of the fact that Plaintiff is male, but rather, out of the termination of the intimate physical and emotional relationship she shared with him. Clearly, the end of this ill-fated relationship brought with it hurt feelings and bruised egos—perfect ingredients for the bearing of a grudge. Viewing the undisputed material facts in the light most favorable to Plaintiff, it is clear to the Court

860 F.Supp. 1401, 1408 (D.Neb.1994) (holding that sex-related statements by a co-worker made to the plaintiff while she was at home and on suspension from work did not amount to improper conduct at the workplace and,

therefore, did not constitute actionable sexual harassment), *aff'd,* 53 F.3d 335 (8th Cir.), *cert. denied,* 516 U.S. 870, 116 S.Ct. 190, 133 L.Ed.2d 126 (1995).

that the consequence of the failed relationship (i.e., Ms. Lorenz's harassment of Plaintiff) was not the result of Plaintiff's gender "but of responses to an individual because of her former intimate place in [that individual's] life." *Keppler v. Hinsdale Township High Sch. Dist. 86,* 715 F.Supp. 862, 869 (N.D.Ill.1989). In other words, Plaintiff's gender was not the impetus for Ms. Lorenz's conduct; rather, it was merely coincidental to that conduct. *See Huebschen v. Department of Health and Soc. Servs.,* 716 F.2d 1167, 1172 (7th Cir.1983).[9]

The Eleventh Circuit has not yet addressed a factual scenario similar to the one presented in the instant case, and the Court notes that case law in general on this issue is sparse. However, as to those cases in other jurisdictions that have addressed similar facts, the Court finds such cases to be persuasive. For instance, in *Huebschen,* the plaintiff (male) brought an action under 42 U.S.C. § 1983 against his supervisor (female) for alleged sexual harassment in violation of the Equal Protection Clause. 716 F.2d at 1168.[10] The plaintiff (a probationary supervisory employee) had developed a close friendship with his supervisor which ultimately culminated in one sexual encounter. *Id.* at 1169. Subsequently, the relationship became "up and down," with the supervisor acting unfriendly and making sexually insulting remarks to the plaintiff. When the plaintiff protested the treatment, the supervisor informed him that there were problems with his job and, eventually, recommended his termination from the program. *Id.*

The court in *Huebschen* held that the plaintiff was not discriminated against based upon his gender. *Id.* at 1172. The court reasoned that although the supervi-

sor reacted spitefully toward the plaintiff by recommending his termination, the supervisor's "motivation in doing so was not that Huebschen was male, but that he was a former lover that jilted her." *Id.* Thus, the *Huebschen* court found that the supervisor discriminated against the plaintiff as an individual and not as a male, and hence concluded that:

> Thus the proper classification, if there was one at all, was the group of persons with whom [the supervisor] had or sought to have a romantic affair. It was this group, of which Huebschen may have been the only one, that [the supervisor] sought to disadvantage. As unfair as [the supervisor's] treatment of Huebschen may have been, we simply are not persuaded that the Equal Protection Clause should protect such a class.

*Id.* See also *DeCintio,* 807 F.2d at 308 (noting that the EEOC's guidelines indicate that "sexual relationships between co-workers should not be subject to Title VII scrutiny, so long as they are personal, social relationships.") (citing "Preamble to Interim Guidelines on Sex Discrimination," 45 Fed.Reg. 25024 (1980)).

In *Freeman v. Continental Technical Servs., Inc.,* 710 F.Supp. 328, 329–30 (N.D.Ga.1988), the plaintiff began having sexual relations with the president and part owner of the defendant corporation, who was married at the time. The plaintiff subsequently became pregnant allegedly with the president's child, and told him she would terminate the pregnancy. *Id.* at 330. The plaintiff thereafter changed her mind and so informed the president. Within a few days of this revelation, the president then closed down the office location in which the plaintiff worked (allegedly due to money problems), transferred the sole other employee to another office, and

---

9. The Court's conclusion in this regard is further bolstered by the unrefuted testimony in the record that Ms. Lorenz had a spiteful or vindictive nature irrespective of the recipient's gender, and by the fact that Plaintiff's wife had to seek a restraining order against Ms. Lorenz because of Ms. Lorenz's allegedly tormenting behavior toward her.

10. Employment discrimination claims under the Equal Protection Clause apply the same prima facie standards and burdens of proof as Title VII discrimination claims. *See, e.g., Cross v. State of Alabama,* 49 F.3d 1490, 1507–08 (11th Cir.1995).

terminated the plaintiff (allegedly because there was no other position open for which the plaintiff would qualify). *Id.* The court in *Freeman* held that the plaintiff was terminated not because of her gender, but "because of her sexual relationship with [the president] and the consequences thereof" (i.e., the resulting pregnancy and the plaintiff's decision to keep the baby), stating specifically that: "Freeman was terminated because of personal problems she was having with [the president] and the personal animosity arising therefrom." *Id.* at 331. As an example to support its reasoning, the court stated:

> It would be possible for a male supervisor to have an intimate homosexual relationship with a lower level male employee. If subsequent events, such as the employee's threat to blatantly expose the relationship to the supervisor's wife, friends and subordinates, caused the supervisor to terminate the employee, it would not be because the employee was a male.

*Id.* at 331 n. 2. Hence, the *Freeman* court concluded that the "discharge of an employee for sexual or sex-related behavior does not constitute unlawful sex discrimination under Title VII." *Id.*

The decision in *Keppler,* although made solely in a *quid pro quo* context, is also instructive. In *Keppler,* an administrator with the defendant school district had a consensual sexual relationship with one of the school's principals. The affair ended in March 1986. 715 F.Supp. at 864. In April 1986, the principal made three sexual advances toward the plaintiff at non-work-related social functions, all of which were rejected. *Id.* at 865. From August 1986 through February 1988, the principal made a number of negative comments to the superintendent (the plaintiff's supervisor) about the plaintiff's work performance. In early 1988, the superintendent asked the plaintiff to resign her administrative position. Ultimately, the plaintiff's position was terminated and she was transferred to a teaching position. *Id.* at 865–66. The plaintiff then brought suit under Title VII and 42 U.S.C. § 1983, predicating both claims on the alleged sexual harassment by the principal.

The court in *Keppler* granted summary judgment in favor of the defendant, finding that the principal's conduct did not arise to actionable sexual harassment. *Id.* at 870. The court reasoned, *inter alia,* that "even assuming the truth of Ms. Keppler's testimony, Dr. Miller requested on a few occasions that they resume their relationship, and became angry when she refused. Bearing a grudge, he then embarked on a campaign to denigrate her in the eyes of Superintendent Thorson, with the ultimate goal of having her removed from her administrative position.... Even if Dr. Miller did seek retribution against Ms. Keppler for abandoning their relationship ... the most she has shown is that Dr. Miller reacted harshly to their failed relationship." *Id.* at 869. In finding no sexual harassment, the *Keppler* court stated "Whether explicit or implicit, a desire to continue a prior consensual relationship is not, on its own, an impermissible basis for personnel action under Title VII." *Id.* at 870 n. 7. *See also Intlekofer v. Turnage,* 973 F.2d 773, 783–85 (9th Cir.1992) (Wiggins, J., dissenting) (stating that, in a case involving workplace hostility after the end of a consensual relationship between coworkers, "[i]t is not an employer's responsibility to mediate relationship disputes between employees unless and until there is actual sexual harassment," and that sexual harassment should not include "simple hostility between coworkers of the opposite sex, without sexual overtones.").[11]

---

**11.** In *Intlekofer,* the only issue on appeal was whether the employer took prompt remedial action upon notice of the plaintiff's allegations of sexual harassment. Hence, the majority did not address whether the harassing conduct in that case arose to sexual harassment, as the parties did not appeal the lower court's finding in that regard. 973 F.2d at 774 n. 1. In his dissent, Judge Wiggins found that the conduct in issue, when "viewed in the context of their prior relationship and of the behavior [the plaintiff] apparently directed toward [the co-worker]," did not constitute sexual harassment. Judge Wiggins further

Based upon the foregoing case law, it is evident to the Court that if an employer cannot be held liable for harassment in a supervisor-to-employee context following the end of a consensual personal relationship where the harassment has not been shown to be gender-based, it stands to reason that it should also not be held liable in the co-worker to co-worker context under similar circumstances. The Court therefore concludes that summary judgment in favor of the Defendant on Plaintiff's sexual harassment claim is warranted.

### 2. Disparate Treatment Sex Discrimination.

■ The sole basis for Plaintiff's disparate treatment claim is that the Defendant failed to take prompt remedial action because of Plaintiff's gender, and as his sole support for this claim points to Mr. Garner's statement that "you're a man, deal with it." Plaintiff asserts the statement constitutes direct evidence of discrimination. The Court disagrees. Here, assuming that the statement was in fact made by Mr. Garner, the record is completely silent as to what role, if any Mr. Garner played in the administrative process or in the final determination of non-discrimination. In fact, Plaintiff does not even show what Mr. Garner's duties were with respect to the EEEO in general. The law is clear that, for statements of discriminatory intent to constitute direct evidence of discrimination, they must be made by a person involved in the challenged employment decision. *See Trotter v. Board of Trustees,* 91 F.3d 1449, 1453–54 (11th Cir.1996). *See also Price Waterhouse v. Hopkins,* 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring) ("Thus, stray remarks in the workplace, while perhaps probative of sexual harassment, ... cannot justify requiring the employer to prove that its [employment] decisions were based on legitimate criteria. Nor can statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself, suffice to satisfy the plaintiff's burden in this regard.").

Moreover, taking the statement in context, Mr. Garner does not state that Plaintiff's charges will not be investigated, and the record is undisputed that Plaintiff did in fact meet with the Director of the EEEO (Urrutia) and the investigator (Fernandez) assigned to his complaint. It is further undisputed that an investigation was in fact conducted. At best, the Court finds that Garner's statement merely suggests a discriminatory motive and therefore, by definition, it is only circumstantial evidence as to possible discrimination in the EEEO process. *See Schoenfeld v. Babbitt,* 168 F.3d 1257, 1266–67 (11th Cir. 1999). However, to the extent Plaintiff is also claiming that the EEEO acted in a discriminatory fashion, the fact that he may disagree with the ultimate determination reached by the EEEO or the amount of time it took for them to conduct their investigation does not, absent more, render the process discriminatory. In this regard, Plaintiff has failed to proffer any evidence (other than sheer speculation) of unequal treatment by the EEEO.

Absent direct evidence, Plaintiff must establish, at a minimum, a prima facie case of disparate treatment in order to prevail on his discrimination claim. To do so, Plaintiff must show, *inter alia,* that similarly situated female employees were treated differently or better in complaining of sexual harassment.[12] *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254, 258, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). This Plaintiff has failed to do.

■ Specifically, the Court finds a lack of record evidence (other than Plaintiff's own unsubstantiated belief) establishing

---

noted that "there is significant evidence that [the plaintiff] and [the co-worker] disliked each other and each was therefore hostile toward the other." *Id.* at 785.

12. For purposes of summary judgment, the Court assumes, without deciding; that Plaintiff can meet the other elements of his prima facie case.

that Plaintiff was treated any differently than female employees who complained of harassment, either to Principal Grice or to the EEEO. In fact, the *only* evidence in the record regarding treatment of female employees who complain of harassment militates against a finding of gender discrimination in this instance. Indeed, the evidence here shows that both Plaintiff and Ms. Lorenz complained to Principal Grice of harassment by the other; both were admonished by the Principal, and both believe nothing was done to rectify their situation. In the Court's view, Plaintiff and Ms. Lorenz received equal treatment. Hence, the Court concludes that Plaintiff has not met his ultimate burden of showing that Defendant intentionally treated him less favorably than female employees. *See McCollum,* 794 F.2d at 608; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Accordingly, the Court shall enter summary judgment in Defendant's favor on Plaintiff's disparate treatment claim as well.

## CONCLUSION

Based upon the undisputed material facts and the foregoing analysis, it is hereby

ORDERED that Defendant's Motion for Summary Final Judgment [D.E. No. 23] is GRANTED, and Plaintiff's Motion for Summary Judgment [D.E. No. 38] is DE-NIED. Pursuant to *Fed.R.Civ.P.* 58, Final Summary Judgment shall enter under separate order.