Elaine M. MAYS, Plaintiff,

v.

UNITED STATES POSTAL SERVICE, et al., Defendants.

Civ. No. 95–D–559–E.

United States District Court, M.D. Alabama, Eastern Division.

April 8, 1996.

Marvin W. Wiggins, Chestnut, Sanders, Sanders & Pettaway, P.C., Selma, AL, for plaintiff.

Redding Pitt, U.S. Attorney, Leura J. Garrett, U.S. Attorney's Office, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court are the defendants' motions, filed August 2, 1995, for partial dismissal, to strike the jury demand and for summary judgment. The plaintiff responded in opposition on August 28, 1995, to which the defendants replied on March 29, 1996. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds that the defendants' motions are due to be granted.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1331 as the plaintiff alleges a violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*[1] *See* 28 U.S.C. § 1331. Personal jurisdiction and venue are not contested.

## FINDINGS OF FACT[2]

The plaintiff, Elaine M. Mays, a black female, is a former employee of the United States Postal Service in Auburn, Alabama. She was initially hired by the Postal Service as a part-time flexible carrier on or about September 21, 1990. Pl.'s Compl. at ¶ 6; Hall Aff. at 1. As with all new employees, she was required to undergo a ninety-day probationary period, during which she was subject to discharge at any time.[3] *Id.* at 1–2; McLaughlin Aff. at 1.

Ms. Mays received periodic evaluations at thirty, sixty and eighty days after the commencement of her employment. During said evaluations, her performance was reviewed and she was evaluated as to her superiors' expectations. Hall Aff. at 2; McLaughlin Aff. at 2. One of these expectations consisted of Ms. Mays casing at least five linear feet of segmented mail per hour. McLaughlin Aff. at 3–4 & Exs. P–R; Hall Aff. at 4 & Exs. O–Q. Due in part to her inability to meet said requirement, Ms. Mays' immediate supervisor, Larry Hall, recommended that she be terminated at the time of her sixty-day evaluation. Hall Aff. at 2. However, Postmaster Dan McLaughlin decided that he would give Ms. Mays additional time to demonstrate whether she could meet the performance standards for casing segmented mail. *Id.* at 2–3; McLaughlin Aff. at 2–3. Postmaster McLaughlin instructed Mr. Hall to give Ms. Mays additional training on the casing of segmented mail in hopes that additional training would enable her to meet the casing requirement of segmented mail. Hall Aff. at 3; McLaughlin Aff. at 3. As such, Ms. Mays was assigned to do "segmentation" work for an additional twelve days after the sixty-day evaluation. Hall Aff. at 3. However, Ms. Mays failed to reach the performance requirement of five linear feet per hour. *Id.* Therefore, Postmaster McLaughlin made the final determination at the time of Ms. Mays' eighty-day evaluation that she had not improved sufficiently to warrant retention. *Id.* Accordingly, Ms. Mays was notified that she would be terminated effective December 11, 1990. Pl.'s Compl. at ¶ 7; McLaughlin Aff. at 3 & Ex. G; Hall Aff. at 3–4 & Ex. F.

---

1. The plaintiff has exhausted her administrative remedies because she filed a claim with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the last discriminatory act and has filed this judicial action within ninety days of receiving her right to sue letter from the EEOC.

2. The court's findings of fact are relevant only to the defendants' motion for summary judgment, not the motion for partial dismissal. However, for organizational purposes, the court chooses to set out its findings at this point in the opinion. The court declines to treat the motion for partial dismissal as a motion for summary judgment because the motion for partial dismissal concerns solely questions of law. As such, any evidence presented in support and in opposition to the motion for summary judgment is not relevant to the motion for partial dismissal.

3. The probationary period is a limited period of time in which the Postal Service has an opportunity to assess an employee's potential and determine whether that individual demonstrates the abilities and attitude which would make him or her the type of employee that the agency would retain on a "permanent" basis. McLaughlin Aff. at 1–2; *See Beeson v. Hudson*, 630 F.2d 622, 626 (8th Cir.1980); *Bartholomew v. United States*, 740 F.2d 526, 530 (7th Cir.1984); *Carver v. Casey*, 669 F.Supp. 412, 417 (S.D.Fla.1987).

Two white male employees were also on probationary status at approximately the same time as Ms. Mays, Tim Cox and Bill McGuire. Hall Aff. at 9. These individuals met the segmentation casing standard and were retained. McLaughlin Aff. at 3–4; Hall Aff. at 4. Mr. Cox met the "segmentation" requirement after eight attempts, Hall Aff. at 4 & Ex. Q., whereas, Mr. McGuire met the "segmentation" requirement after eleven attempts, Hall Aff. at 4 & Ex. R. In comparison, although Ms. Mays made twenty-one attempts, she never met the requirement. Hall Aff. at 4 & Ex. P. In fact, the highest rate at which Ms. Mays was able to case segmented mail was 3.78 linear feet per hour. *Id.*

On March 4, 1991, Ms. Mays filed a complaint with the EEOC alleging that she had been discriminated against on the basis of race and sex in connection with her termination. Pl.'s Compl. at ¶ 18; Maclin Aff. at 2 & Ex. A. Following an investigation, a hearing was held before the an Administrative Law Judge appointed by the EEOC. Pl.'s Compl. at ¶ 25; Maclin Aff. at 2. Following said hearing, the Administrative Law Judge issued a recommended decision on April 15, 1993, finding that Ms. Mays had not been discriminated against on the basis of race or sex in connection with her discharge. Pl.'s Compl. at ¶ 26; Maclin Aff. at 2–3 & Ex. E. A final agency decision was then issued by the Postal Service on June 8, 1993, adopting the Judge's recommended decision. Pl.'s Compl. at ¶ 27; Maclin Aff. at 3 & Ex. F.

Ms. Mays sought review of the final agency decision by the Office of Federal Operations of the EEOC. Maclin Aff. at 3 & Ex. G. The EEOC issued a decision on June 27, 1994, affirming the final agency decision previously issued by the Postal Service. Pl.'s Compl. at ¶ 29; Maclin Aff. at 3 & Ex. H. On or about July 13, 1994, Ms. Mays sought reconsideration of said decision by the EEOC. Pl.'s Compl. at ¶ 30; Maclin Aff. at 3. On March 23, 1995, the EEOC issued a denial of the request to reconsider. Maclin Aff. at 3 & Ex. I.

Thereafter, Ms. Mays filed this action seeking relief against the United States Postal Service, Postmaster General Marvin T. Runyon, in his individual and official capacity, Mr. Hall, in his individual and official capacity, and Postmaster McLaughlin, in his individual and official capacity. In Counts I and II, she claims that said defendants discriminated against her based on her sex and race. In Count III, she contends that said defendants deprived her of her rights and privileges secured by the Alabama Constitution and the equal protection clause of the Fourteenth Amendment. She appears to be seeking remedies to the alleged violations in Count III through 42 U.S.C. § 1983.[4] Count IV alleges that said defendants acted in concert and with deliberate indifference toward her constitutional rights in violation of 42 U.S.C. § 1985. Count V seeks to hold Postmaster General Runyon, Mr. Hall and Postmaster McLaughlin liable in both their individual and official capacities for discharging Ms. Mays solely because of her race and sex. In Count VI, Ms. Mays alleges that Postmaster Runyon, Mr. Hall and Postmaster McLaughlin, in their individual and official capacities, acted individually and/or in concert to harass, terminate and discriminate against Ms. Mays while she was employed with the Auburn Post Office.

## DISCUSSION

### I. MOTION FOR PARTIAL DISMISSAL

#### A. *Standard of Review for Motion to Dismiss*

Pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure,* a defendant may move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief may be granted. A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing

---

4. While Ms. Mays refers to § 1983 in her complaint, the court notes that § 1983 only authorizes suits against state and local officers. Thus, § 1983 has no application to the federal government or its officers. The court further notes, however, that the Supreme Court of the United States has created a similar remedy to redress constitutional violations by federal officials. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert,* 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon,* 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See e.g., Sofarelli v. Pinellas County,* 931 F.2d 718, 721 (11th Cir.1991); *see also Brower v. County of Inyo,* 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

■ On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant "sustains a very high burden."[5] *Jackam v. Hospital Corp. of America Mideast, Ltd.,* 800 F.2d 1577, 1579 (11th Cir.1986) (citing *Currie v. Cayman Resources Corp.,* 595 F.Supp. 1364, 1376 (N.D.Ga.1984)). The Court of Appeals for the Eleventh Circuit has held, "motions to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims." *Jackam,* 800 F.2d at 1579 (quoting *Bracewell v. Nicholson Air Servs., Inc.,* 680 F.2d 103, 104 (11th Cir. 1982)); *see also Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

■ The court also stresses that on a motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1) of the *Federal Rules of Civil Procedure,* the nonmoving party has the burden of showing that it properly invoked the court's jurisdiction. *Menchaca v. Chrysler Credit Corp.,* 613 F.2d 507, 511 (5th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980).[6] In ruling on the motion, the court is to "consider the allegations of the complaint as true." *Williamson v. Tucker,* 645 F.2d 404, 412 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

### B. *Exclusive Remedy—Title VII*

The defendants contend that Title VII provides the exclusive remedy for Ms. Mays' claims of discrimination, and therefore, all of Ms. Mays' claims other than those brought under Title VII should be dismissed. In support thereof, the defendants rely on *Brown v. General Services Administration,* 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), *Grier v. Secretary of Army,* 799 F.2d 721, 724 n. 2 (11th Cir.1986), and *Canino v. United States EEOC,* 707 F.2d 468 (11th Cir.1983). Ms. Mays has not only failed to respond to this contention by the defendants, but also to any of the defendants' contentions in their motion to partially dismiss.

In *Brown v. General Services Administration, supra,* the Supreme Court of the United States addressed whether a plaintiff can bring separate claims in addition to a Title VII claim for alleged discrimination in federal employment. 425 U.S. at 821, 96 S.Ct. at 1962. The Court answered in the affirmative, holding that Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835, 96 S.Ct. at 1969. Similarly, in *Grier v. Secretary of Army,* 799 F.2d 721 (11th Cir. 1986), the Eleventh Circuit explained that "[s]ection 717 of Title VII, 42 U.S.C. § 2000e–16, is the 'exclusive preemptive administrative and judicial remedy for the redress of federal employment discrimination.'" 799 F.2d at 724 n. 2. Moreover, in *Canino v. United States EEOC, supra,* the Eleventh Circuit interpreted *Brown* as mandating that a former federal employee must bring all employment discrimination claims under Title VII. 707 F.2d at 472; *see also Grier, supra.*

The court finds that Ms. Mays' non-Title VII claims are premised upon the identical conduct that comprises the basis of her racial and sexual employment discrimination allegations. Hence, all claims except the Title VII claims of race and age discrimination are due to be dismissed. The court will address separately each non-Title VII claim below.

---

**5.** Rule 12(b)(6) of the *Federal Rules of Civil Procedure* permits a party to plead or move for dismissal of a complaint if that complaint fails to state a claim upon which relief may be granted.

**6.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

### i. Equal Protection Claim

■ In Count III of her complaint, Ms. Mays alleges that the defendants' conduct violated the equal protection clause of the Fourteenth Amendment. Her equal protection claim arises solely from her assertions that she was treated differently than other white, male probationary employees as to her employment evaluations and her subsequent discharge. Hence, Ms. Mays' equal protection claim concerns only alleged federal employment discrimination and thereby is preempted by Title VII under *Brown. See Porter v. Adams,* 639 F.2d 273, 278 (5th Cir.1981).

■ In addition, the court will not create a *Bivens*-type remedy for Ms. Mays. *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In *McCollum v. Bolger,* 794 F.2d 602 (11th Cir. 1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 883, 93 L.Ed.2d 836 (1987), the Eleventh Circuit succinctly summarized *Bivens* and its progeny, *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) and *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), as follows:

> [T]he Supreme Court held that the Constitution provided a cause of action for damages against federal officials. The *Bivens* line of cases confers "adequate power to award damages to the victim of a constitutional violation", except when Congress establishes an alternative remedy and indicates, either explicitly or implicitly, "that the Court's power should not be exercised". Without such an indication from Congress, the federal courts must fashion damage remedies for constitutional violations as would any common law court, "paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation".

794 F.2d at 606–07 (quoting *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648) (internal footnotes omitted). Because all of the defendants in this case are federal actors, Ms. Mays may sue them only in their individual capacities under an implied remedy directly under the United States Constitution.

*See Bivens,* 403 U.S. at 397, 91 S.Ct. at 2005; *see also FDIC v. Meyer,* 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (holding that a *Bivens* action for damages for the violation of a constitutional right may not be brought against a federal agency, but is limited to suits against individual federal employees). However, such a claim will not survive a motion to dismiss, as set forth below.

In *McCollum, supra,* the Eleventh Circuit held that the Supreme Court's decision in *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), bars constitutional claims by a federal Postal Service employee against the employee's supervisor where the claim arises from the employment relationship. As the above-quote demonstrates, the court in *McCollum* recognized a federal court's inherent power to fashion damage remedies for constitutional violations where Congress has not created an alternative remedy, but reminded that courts should pay "particular heed ... to any special factors counselling hesitation before authorizing a new kind of federal litigation." *Bush,* 462 U.S. at 378, 103 S.Ct. at 2411. As such, the court is persuaded by the following reasoning in *McCollum:*

> The special factor in *Bush* that counselled hesitation was the plaintiff's employment relationship with the federal government, which was governed by a comprehensive remedial scheme: the federal civil service laws. The Court deferred to the "considerable familiarity [of Congress] with balancing governmental efficiency and the rights of employees", and also the ability of Congress to "inform itself through fact-finding procedures that are not available to the courts".
>
> Unlike the plaintiff in *Bush,* [the plaintiff here] is not protected by the civil service laws. Her employment status is, nonetheless, governed by a comprehensive procedural and substantive system that provides an adequate remedy.

*McCollum,* 794 F.2d at 607 (internal footnote omitted).

The court in *McCollum* went on to hold that the grievance procedures in the Postal

Service collective bargaining agreement, 39 U.S.C. § 1206(b), are not markedly less adequate or less comprehensive than the civil service remedies under *Bush.* Therefore, for the same reasons relied upon by the Supreme Court in *Bush,* the court refused to create constitutional tort action against the Postal employee's supervisor. *Id.; accord, e.g., Ellis v. United States Postal Service,* 784 F.2d 835 (7th Cir.1986); *Roman v. United States Postal Service,* 821 F.2d 382 (7th Cir.1987); *Travis v. Frank,* 804 F.Supp. 1160 (E.D.Mo.1992).

Similarly, here, the court finds that special factors advise hesitation in the creation of a constitutional remedy against Ms. Mays' supervisors. Her constitutional claims arise from her termination as a letter carrier with the United States Postal Service. As such, her claims are subject to the remedial scheme created by Congress in Title VII, and the court will not create additional remedies for Ms. Mays. Based on the foregoing, the court finds that Count III alleging a violation of the Equal Protection Clause is due to be dismissed.

### ii. 42 U.S.C. § 1985

■ The court next will address the substance of Ms. Mays' claims under 42 U.S.C. § 1985(3), which addresses conspiracies committed by private actors. Count IV of Ms. Mays' complaint alleges that the defendants conspired to deny and deprive her of her constitutional right to equal protection in violation of 42 U.S.C. § 1985. Pl.'s Compl. at ¶¶ 41 & 42. Ms. Mays also alleges that the defendants violated 42 U.S.C. § 1985 by conspiring to deprive her of her rights guaranteed by the Alabama Constitution. *Id.* Although § 1985 has several intricate subdivisions,[7] the court will only consider subsection (3), which is relevant to this case. The Eleventh Circuit has summarized the basic elements of § 1985(3) as follows:

> "(1) conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privi-

leges and immunities under the laws; and (3) act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Brotherhood of Carpenters & Joiners of America, Local 610, AFL–CIO v. Scott,* 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049 (1983). More specifically, the second element requires a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.* at 829, 103 S.Ct. at 3356 [ (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971)) ].

*Lucero v. Operation Rescue of Birmingham,* 954 F.2d 624, 627 (11th Cir.1992); *see also Saville v. Houston County Healthcare Auth.,* 852 F.Supp. 1512, 1537 (M.D.Ala.1994).

As the above quote underscores, the Supreme Court of the United States, in analyzing the predominate purpose of the civil rights conspiracy statute, has viewed § 1985(3) in a narrow sense. *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). Specifically, the Court has stated that lacking other evidence of congressional intention, it would withhold judgment on the question "whether § 1985(3), as enacted, went any farther than its central concern—combating the violent and other efforts of the [Ku Klux] Klan and its allies to resist and to frustrate the intended effects of the Thirteenth, Fourteenth, and Fifteenth Amendments." *Id.* at 837, 103 S.Ct. at 3360. Essentially, the Court hints that the section's main focus is on racial discrimination.

Here, the conduct alleged by Ms. Mays as a basis for her § 1985 claim is the same conduct related to her termination as a Postal employee that gave rise to her Title VII claims. As discussed *supra,* the Supreme Court in *Brown* determined that Title VII is the exclusive judicial remedy for federal employment discrimination. Consequently, Ms. Mays § 1985 claim must fail.

---

**7.** *See Kush v. Rutledge,* 460 U.S. 719, 724–25, 103 S.Ct. 1483, 1486–87, 75 L.Ed.2d 413 (1983)

(parsing subdivisions of § 1985).

In addition, the Supreme Court of the United States has held that "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 378, 99 S.Ct. 2345, 2352, 60 L.Ed.2d 957 (1979). In so holding, the Court reasoned that if rights created by Title VII could be pursued within the remedial framework of § 1985, it would allow plaintiffs to bypass the administrative and procedural requirements of Title VII and would undermine the effectiveness of Title VII. *Id.* at 375–76, 99 S.Ct. at 2350–51. Therefore, for the same reasons as the Court's decision in *Brown*, the Court in *Novotny* held that § 1985(3) "may not be invoked to redress violations of Title VII." *Id.* at 378, 99 S.Ct. at 2352.

■ Finally, the court notes that § 1985 creates no substantive rights, but prohibits conspiracy to deprive a person of rights created elsewhere. *United States v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966); *Stevens v. Tillman*, 855 F.2d 394, 404 (7th Cir.1988), *cert. denied*, 489 U.S. 1065, 109 S.Ct. 1339, 103 L.Ed.2d 809 (1989). Here, Ms. Mays seems to be alleging that the conspiracies deprived her of equal protection as provided under the United States Constitution and the Alabama Constitution. However, as discussed *supra*, Ms. Mays' claim pursuant to the equal protection clause of the Fourteenth Amendment is without merit. Moreover, as discussed *infra*, Ms. Mays state law claims are without merit. As such, there can be no conspiracy where there is no underlying wrongful act. Based on the foregoing, Ms. Mays' § 1985 claim is due to be dismissed.

### iii. State Law Claims

■ The court now turns to Ms. Mays' state law claims. Ms. Mays purports to sue Postmaster General Marvin T. Runyon, Larry Hall and Postmaster Dan McLaughlin in their official and individual capacities for violations of the Alabama Constitution. The

defendants contend that the United States should be substituted as the defendant in place of federal employees Mr. Runyon, Mr. Hall and Mr. McLaughlin on Ms. Mays' state law claims.

The United States Attorney for the Middle District of Alabama has certified that Mr. Runyon, Mr. Hall and Mr. McLaughlin were acting within the scope of their federal employment at the time of the incidents giving rise to Ms. Mays' claims. *See* Scope of Employment Certification, attach. to Def.s' Notice of Substitution filed Aug. 2, 1995. Ms. Mays has alleged the same in her complaint. Pl.'s Compl. at ¶ 46. In accordance with the United States Attorney's certification, and as a result of the Notice of Substitution filed on August 2, 1995 by the United States, the court finds that the United States is to be substituted as the defendant in the place of federal employees Mr. Runyon, Mr. Hall and Mr. McLaughlin on Ms. Mays' state law claims. *See* 28 U.S.C. § 2679(d)(1); *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1543 (11th Cir.1990) (the substitution of the United States is an automatic consequence of the Attorney General's certification), *amended*, 924 F.2d 1555, *cert. denied*, 502 U.S. 813, 112 S.Ct. 62, 116 L.Ed.2d 37 (1991). Based on the foregoing, the court finds that Mr. Runyon, Mr. Hall and Mr. McLaughlin are due to be dismissed concerning Ms. Mays' state law claims and the United States substituted in their place.

■ The court further finds that the United States is due to be dismissed on Ms. Mays' state law claims for lack of subject matter jurisdiction. Pursuant to 28 U.S.C. § 2675(a), a plaintiff cannot maintain an action against the United States for money damages for injury caused by the negligent or wrongful act or omission of any government employee "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency...."[8] *See* 28 U.S.C. § 2675(a). Section

---

8. Section 2675(a) provides in pertinent part:
 An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury

or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have

2675(a) further states that in the event an agency fails to make a final determination on a claim within six months after it is filed, the claimant may proceed with a suit as though the claim had been denied. As stated by the Eleventh Circuit, "[o]ne of the primary purposes of the procedure for administrative exhaustion established by section 2675(a) is to mak[e] it possible for the government to expedite the fair settlement of tort claims asserted against the United States." *Brown v. United States,* 838 F.2d 1157, 1163 (11th Cir.1988) (quoting S.Rep. No. 1327, 89th Cong., 2d Sess. 6, *reprinted in* 1966 U.S.Code Cong. & Admin.News 2515, 2516); *see also Johnson v. United States,* 704 F.2d 1431, 1442 (9th Cir.1983) ("The primary goal of the procedures established by the FTCA [, the Federal Tort Claims Act (28 U.S.C. § 2401, *et seq.*),] is to facilitate satisfactory administrative settlements.").

■ Consistent with the foregoing, the Supreme Court of the United States has held that a federal district court has no subject matter jurisdiction over a suit against the United States unless the plaintiff has first filed an administrative claim with the concerned agency pursuant to § 2675(a) and that claim has been denied or deemed denied by operation of law. *McNeil v. United States,* 508 U.S. 106, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Lykins v. Pointer, Inc.,* 725 F.2d 645, 646 (11th Cir.1984). The requirement of filing an administrative claim is a jurisdictional prerequisite to suit and cannot be waived. *Brown,* 838 F.2d at 1163 (citing *Lykins,* 725 F.2d at 646); *Gregory v. Mitchell,* 634 F.2d 199, 203–04 (5th Cir.1981). Thus, a plaintiff must show proof that he or she has complied with § 2675(a) in order to sue the United States. *Lykins,* 725 F.2d at 647 ("To satisfy the jurisdictional requirements '[t]here must be proof of timely written notice of the claim to the appropriate agency, which appears of record,' ... and the administrative claim must have been for a

'sum certain,' ... or a 'dollar amount'....") (citations omitted).

Here, Ms. Mays has neither alleged nor presented any evidence that she filed an administrative claim with the Postal Service, that the Postal Service denied a claim, or that six months have passed since a claim was filed.[9] Because the evidence reveals that Ms. Mays did not comply with the requirement of § 2675(a), the court lacks subject matter jurisdiction over her state claims against the United States. *See United States v. Burzynski Cancer Research Institute,* 819 F.2d 1301, 1306–07 (5th Cir.1987), *cert. denied sub nom. Wolin v. United States,* 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988); *Gregory,* 634 F.2d at 204; *Suarez v. United States,* 22 F.3d 1064 (11th Cir.1994).

■ Even if Ms. Mays had filed an administrative claim in this action, her state constitutional claims would nonetheless be barred because Title VII is the exclusive judicial remedy for federal employment discrimination. *See supra* at pp. 7–8; *see also American Postal Workers Union, AFL–CIO v. United States Postal Service,* 940 F.2d 704, 708–09 (D.C.Cir.1991) (A comprehensive remedial scheme as is available to probationary postal employees precludes the review of federal employment termination decisions in a FTCA action.); *accord, Premachandra v. United States,* 739 F.2d 392, 394 (8th Cir. 1984).

For the foregoing reasons, the court concludes that the claims which Ms. Mays seeks to maintain under 42 U.S.C. §§ 1983 and 1985 and under the United States and Alabama constitutions must be dismissed. In other words, Ms. Mays' Title VII claim is the only one upon which relief can be granted. The court will now address the defendants' motion to strike Ms. Mays' jury demand.

first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter,

be deemed a final denial of the claim for purposes of this section.
28 U.S.C. § 2675(a).

**9.** As stated earlier, Ms. Mays did not respond to any of the defendants' contentions mentioned in their motion for partial dismissal.

## II. MOTION TO STRIKE JURY DE-MAND

■ It is well established that prior to the 1991 Amendments to Title VII, "there [was] no right to trial by jury in cases arising under Title VII." *Lehman v. Nakshian,* 453 U.S. 156, 164, 101 S.Ct. 2698, 2703, 69 L.Ed.2d 548 (1981) (citing *Lorillard v. Pons,* 434 U.S. 575, 583–84, 98 S.Ct. 866, 871–72, 55 L.Ed.2d 40 (1978)); *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 375 n. 19, 99 S.Ct. 2345, 2350 n. 19, 60 L.Ed.2d 957 (1979). In 1991, Title VII was amended to provide in part for the right to trial by jury. *See* 42 U.S.C. § 1981a(c). However, the 1991 Amendments did not become effective until November 21, 1991, and the Supreme Court of the United States has held that the Amendments do not apply retroactively. *See Landgraf v. USI Film Products,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1508, 128 L.Ed.2d 229 (1994).

Here, Ms. Mays' termination occurred on December 11, 1990, well before November 21, 1991. McLaughlin Aff. at 3; Exs. A & G. Accordingly, pursuant to the foregoing authority, the court finds that Ms. Mays is not entitled to a jury trial with regard to her remaining Title VII claim. The court will now turn to the merits of the defendants' motion for summary judgment.

## III. MOTION FOR SUMMARY JUDGMENT

### A. *Summary Judgment Standard*

■ On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

■ The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

■ In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a

**1564**

"genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

**B. *Title VII***

 Title VII forbids discrimination on the basis of sex, race, or national origin in a wide range of employment practices, including hiring, discharge and promotion. *Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994) (citing *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1526 (11th Cir.1992)).[10] Here, Ms. Mays seeks to prove her race and sex discrimination claims under the disparate treatment theory. The theory of "disparate treatment" has been stated by the Supreme Court of the United States as

> the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex or national origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment. Undoubtedly disparate treatment was the most obvious evil Congress had in mind when it enacted Title VII.

*International Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977) (internal citation omitted). Thus, the essence of disparate treatment is different treatment: that blacks are treated differently than whites, women differently than men.

 At the outset, the court notes that Postmaster General Marvin T. Runyon, in his official capacity as Postmaster General, is the only proper defendant. Ms. Mays has named Postmaster General Runyon, Post-master Dan McLaughlin and Supervisor Larry Hall, both in their individual and official capacities, as defendants in this matter. However, it is well established that in a suit arising under 42 U.S.C. § 2000e–16(c), as in this case, the sole proper defendant is the head of the agency in his official capacity. *Canino*, 707 F.2d at 472. In fact, § 2000e–16(c) explicitly provides that an aggrieved party under Title VII "may file a civil action as provided in section 2000e–5 of this title, in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." *See* 42 U.S.C. § 2000e–16(c). Since the only claim remaining is the Title VII claim, the court finds that, pursuant to the above instructions, Postmaster McLaughlin and Mr. Hall are due to be dismissed on this remaining claim. Consequently, Post-master General Runyon, in his official capacity, is the only remaining defendant to whom the Title VII claim applies.

 In order for a plaintiff-employee to prevail on a Title VII claim he or she must show that the employer intentionally discriminated against him or her when making the employment decision(s) which gave rise to the suit. *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994) (citing *EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1570 (11th Cir.1993)). While direct proof of discriminatory intent may be preferred, it is not a *sine qua non. Teamsters*, 431 U.S. at 334–40, 97 S.Ct. at 1854–57. In cases of alleged discrimination not supported by direct proof, such as the present action, but rather by circumstantial evidence, the plaintiff-employee first must demonstrate a prima facie case of unlawful discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

---

**10.** 42 U.S.C.A. § 2000e–2(a)(1) (West 1981) provides: "It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin."

■ Under the *McDonnell Douglas* and *Burdine* framework,[11] the plaintiff must first raise an inference of discrimination by establishing a prima facie case. *Batey*, 24 F.3d at 1333 (citation omitted). To demonstrate a prima facie case of discriminatory discharge, Ms. Mays must show: "(1) membership in a protected class, (2) qualification for the position held, (3) termination, (4) and replacement with a person outside the protected class."[12] *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1556 (11th Cir. 1995) (citing *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1532 n. 14 (11th Cir.1987)). "A Title VII plaintiff may make out a prima facie case by a showing of disparate treatment among similarly placed employees." *Pearson v. Macon–Bibb County Hosp. Auth.*, 952 F.2d 1274, 1280 (11th Cir.1992) (citing *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 282–83, 96 S.Ct. 2574, 2579–80, 49 L.Ed.2d 493 (1976)).

■ Once Ms. Mays satisfies her burden by demonstrating a prima facie case of discrimination, a presumption of impermissible discrimination arises. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506–08, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). The burden of production then shifts to the defendant-employer to articulate a legitimate nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 248, 101 S.Ct. at 1090–91. Should Postmaster General Runyon fail to meet his burden of production once Ms. Mays demonstrates prima facie discrimination, "the unrebutted presumption of discrimination stands." *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir.1994) (citing *Joshi v. Florida State University Health Ctr.*, 763 F.2d 1227, 1236 (11th Cir.), *cert. denied*, 474 U.S. 948, 106 S.Ct. 347, 88 L.Ed.2d 293 (1985)).

■ The Eleventh Circuit has determined that this intermediate burden is "exceedingly light." *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994) (quoting *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir.1983)). Thus, to overcome the presumption of discrimination demonstrated by the plaintiff-employee, the defendant-employer "need only offer admissible evidence sufficient to raise a genuine issue of material fact as to whether it had a legitimate reason for [firing] the plaintiff." *Turnes*, 36 F.3d at 1061 (citing *Hill v. Seaboard Coast Line R.R. Co.*, 767 F.2d 771, 774 (11th Cir.1985)).

■ The court finds that Ms. Mays has satisfied the first and third elements of the prima facie case because she is a black female, and she has proved that she was discharged by the Postal Service. The second and fourth requirements of the *McDonnell Douglas* test require a more thorough analysis by the court.

The court recognizes that a prima facie case is not wholly dependent upon meeting the fourth requirement of the *McDonnell Douglas* test. Even though it is unclear whether the Postal Service hired a minority to fill the vacancy left by Ms. Mays, the court may determine that a prima facie case has been established based only on the first three requirements. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir. 1995) (citing *Howard v. Roadway Express, Inc.*, 726 F.2d 1529, 1534–35 (11th Cir.1984)). The court is persuaded by the following reasoning:

All that the plaintiff need do is prove by a preponderance of the evidence that [she] was discharged from the position for which [she] was qualified "under circumstances which give rise to an inference of unlawful discrimination." The underlying purpose

---

11. The Supreme Court of the United States adopted this analysis to implement "[t]he language of Title VII," which "makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens." *McDonnell Douglas*, 411 U.S. at 800, 93 S.Ct. at 1823.

12. The Eleventh Circuit has repeatedly emphasized that an overly strict formulation of the components of a prima facie case is to be avoided. *Walker v. NationsBank of Florida, N.A.*, 53 F.3d 1548, 1555 n. 12 (11th Cir.1995); *Carter v. City of Miami*, 870 F.2d 578, 583 (11th Cir.1989). The analysis is fact specific: "would an ordinary person reasonably infer discrimination if the facts presented remained unrebutted?" *Id.*

of the fourth element in the *McDonnell Douglas* formulation is precisely to establish this unlawful inference of discrimination. But proof that the employer replaced the fired minority employee with a non-minority employee is not the *only* way to create such an inference.

*Jones v. Western Geophysical Co. of America,* 669 F.2d 280, 284 (5th Cir.1982) (quoting *Burdine,* 450 U.S. at 248, 101 S.Ct. at 1090–91) (quoted in *Howard,* 726 F.2d at 1534) (emphasis in original). Since proving that Ms. Mays was replaced by a non-minority is not the only way to show an inference of discrimination, the court will not find Ms. Mays' claim of race and sex discrimination without merit solely because she has failed to satisfy the fourth requirement.

▪ Postmaster General Runyon contends that Ms. Mays was not qualified for the position of letter carrier because she was unable to case five linear feet of segmented mail per hour. *See* Hall Aff. at 3; McLaughlin Aff. at 2–3. In response, Ms. Mays submits allegations in her brief of inadequate training and unfair evaluations. She questions whether the segmentation casing requirement is even a requirement at all. She also questions the qualifications of those similarly situated to her whom the defendants did hire on a "permanent" basis. Most of Ms. Mays' assertions are in narrative form only and include no citations to the record or evidence, as required by Rule 56 of the *Federal Rules of Civil Procedure*[13] and the

court's Rule 16 Scheduling Order entered in this case on September 28, 1995. The court notes that self-serving statements of fact in a party's brief, not in proper affidavit form, may not be considered in determining if a genuine issue of material fact exists. *Soles v. Board of Commissioners,* 746 F.Supp. 106, 110 (S.D.Ga.1990) (citing *Sims v. Mack Truck Corp.,* 488 F.Supp. 592 (E.D.Pa.), *cert. denied,* 445 U.S. 930, 100 S.Ct. 1319, 63 L.Ed.2d 764 (1980); *Tunnell v. Wiley,* 514 F.2d 971 (3d Cir.1975)).

The only exhibit offered by Ms. Mays, which has a bearing upon this second requirement, is an excerpt of the EEOC investigative report prepared by Rose Marie Jones, the EEO counselor/investigator. *See* exhibit F attach. to Pl.'s Resp. to Def.s' Motions.[14] In said report, Ms. Jones discusses the amount of time in which Ms. Mays, and those compared with her, worked on casing segmented mail during their probationary period.[15] Also stated in the report is the fact that Postmaster McLaughlin testified that "once an employee reaches the bench mark of productivity, [he or she] may still be on probation, however they are considered as working and no longer training in that particular area of the job." *See* Report at 5 attach. to Pl.'s Resp. Ms. Jones further reported that Mr. McLaughlin stated "that some employees may show more work time in an area than another employee, however, **once the bench mark is reached in that area the time spent is work and not con-**

---

13. In federal court, a plaintiff may not merely "rest on its pleadings" and survive summary judgment. Rule 56(e) states in part:

When a motion for summary judgment is made and supported as provided in this rule, **an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.**

Fed.R.Civ.P. 56(e) (emphasis added).

14. The court finds it noteworthy to mention that the copy of the investigative report was not sworn or certified, as required by Rule 56(e), and therefore, the court may not consider it. *See Gordon v. Watson,* 622 F.2d 120, 122 (5th Cir. 1980) (citations omitted). Nevertheless, the

court analyzes said report in this opinion because the court recognizes that if no objection is made to inadmissible statements then the court may consider them on a motion for summary judgment. *Olympic Ins. Co. v. H.D. Harrison, Inc.,* 418 F.2d 669, 670 (5th Cir.1969); *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639 (2d Cir. 1988).

15. In the investigative report, Ms. Jones states that Postmaster McLaughlin testified that one of the comparison employees used by Ms. Jones was hired six months before Ms. Mays and was evaluated under different circumstances and criteria. Therefore, the court will not consider said employees' evaluation in its decision. In fact, at the subsequent EEOC proceedings, Mr. McGuire and Mr. Cox, who were trained at the same time as Ms. Mays, were used for comparison.

sidered training." *Id.* (emphasis added). In his affidavit, Mr. Hall made a similar statement.

Ms. Mays, on the other hand, has failed to rebut the testimony of Mr. Hall or Postmaster McLaughlin in which they stated in substance that the assignment to case mail was considered training only up to the point that the trainees reached the performance standard of five linear feet per hour. Hence, it is clear to the court that Ms. Jones' discussion is of the total amount of segmentation assignments given to each of the comparison employees during the probationary period **and** included the work assignments given to them after they successfully met the performance standard. Ms. Mays has proffered no evidence to refute the testimony that the comparison employees met the performance standard with less training than she. Thus, the court finds that the discussion of the total amount of "segmentation" time in Ms. Jones' investigative report does not create a factual issue.[16]

The court also finds it noteworthy to address Ms. Mays' bald assertions that her thirty and sixty-day evaluations were unfair and that her "segmentation" skills were not evaluated during the remaining portions of her probationary period. Mr. Hall has stated that he wanted to terminate Ms. Mays at the end of her first sixty days because of performance problems, including her inability to case segmented mail. Hall Aff. at 3–4. However, the union intervened with Postmaster McLaughlin on Ms. Mays' behalf, arguing that she had not been given sufficient training on casing segmented mail. Postmaster McLaughlin concluded that he would give her additional training in hopes that she could master the same. McLaughlin Aff. at

2–3. She was then given twelve additional days training. McLaughlin Aff. Ex. O.

Specifically, the evidence reveals that Ms. Mays received her sixty-day evaluation on November 19, 1990. Aff. McLaughlin, Ex. C. She was terminated December 11, 1990. Aff. McLaughlin, Ex. F. In between, she did segmentation work on November 23, 24, 26, 27, 29 and 30 and December 1, 3, 4, 5, 6, 8, 1990. She was timed on each of those days to determine how many feet of mail she was casing per hour. Aff. McLaughlin, Ex. O. The final evaluation, which she received on December 10, 1990, reflects that she had not met casing requirements. Aff. McLaughlin, Ex. D. Ms. Mays presents no evidence disputing the foregoing, which the court finds clearly demonstrates that the Postal Service was training Ms. Mays in an attempt to help her complete her probationary period successfully. In fact, the evidence reveals that Ms. Mays received at least twice as much training in casing mail as either of the two comparison employees. *See* Def.s' Mem. in Reply at 4–7 (citing McLaughlin Aff. at 4 & Exs. O & Q; Hall Aff. at 4 & Exs. O, P, Q & R). The court finds that no fair-minded person in the exercise of impartial judgment could reasonably infer from the evidence that the Postal Service inadequately trained Ms. Mays. Consequently, a genuine issue of material fact does not exist. Accordingly, Ms. Mays failed to meet the qualifications of a letter carrier.

Furthermore, while not binding on this court, the EEOC's determination bolsters the court's finding. *See Barfield v. Orange County,* 911 F.2d 644 (11th Cir.1990), *cert. denied,* 500 U.S. 954, 111 S.Ct. 2263, 114 L.Ed.2d 715 (1991) (regarding EEOC deter-

---

**16.** The court finds it noteworthy to mention that the EEOC hearing officer found that work in segmentation was not considered training after the probationary employee reached the performance standard of five linear feet per hour. She also found that Ms. Mays never met the mail casing performance requirement, while Mr. McGuire met it after eleven days and Mr. Cox met the standard after eight days. She further found that Ms. Mays was given more training time than Mr. Cox and Mr. McGuire to meet the standard. Def.s' Attach. A., Ex. E at 12–15. The recommended *decision of the EEO hearing officer,* wherein the hearing officer found that there

was no race or sex discrimination against Ms. Mays in connection with her discharge, and particularly, that Ms. Mays failed to meet the performance standards, were adopted on June 3, 1993, as the final agency decision. Def.s' Attach. A, Aff. of Maclin. The final agency decision was appealed by Ms. Mays and affirmed by the office of federal operations of the EEOC on June 27, 1994. Maclin Aff. Since the final agency decision is the ultimate result of the EEO investigator's report, the court finds that it, rather than the preliminary investigative reports, should be controlling as to the facts of the case as found during the administrative process.

minations as "highly probative") (citations omitted); *see also Bell v. Birmingham Linen Serv.*, 715 F.2d 1552, 1554 n. 4 (11th Cir. 1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 344 (1984). After an investigation, the EEOC determined that the evidence before it did not establish a violation of Title VII:

> "The record shows that appellant knew of the agency's segmentation standard, was provided amply opportunity to achieve it, but never did. The comparative, on the other hand, having been held to the same standard as appellant did achieve the benchmark. Appellant has offered no persuasive evidence to the contrary, nor has she shown that the agency's standard was not a requirement of her position since the discretion to set a benchmark was clearly within the authority of agency officials . . . ."

Maclin Aff., Ex. H at 6. Consistent with the foregoing, the court finds that Ms. Mays has failed to proffer any evidence that she was treated differently than other similarly situated employees. Hence, the court finds that Ms. Mays has failed to demonstrate a prima facie case of race or sex discrimination.[17]

## CONCLUSION

In sum, the court concludes that Title VII is the exclusive judicial remedy available under these circumstances. Moreover, since this action arises under 42 U.S.C. § 2000e–16(c), the proper defendant in this case is Postmaster General Marvin T. Runyon, in his official capacity. In addition, because Ms. Mays' termination occurred prior to November 21, 1991, she is not entitled to a jury trial. However, Ms. Mays was terminated because of her failure to meet the qualifications of a letter carrier, and neither race nor sex played a role whatsoever in that decision.

---

17. The court also notes that in Count VI, Ms. Mays alleges that Postmaster Runyon, Mr. Hall and Postmaster McLaughlin, in their individual and official capacities, acted individually and/or in concert to harass, terminate and discriminate against Ms. Mays while she was employed with the Auburn Post Office. Even liberally construing this language as an attempt to state a claim for a hostile work environment, this claim must

For the foregoing reasons, the court finds that the defendants' motions for partial dismissal and to strike the jury demand are due to be granted. The court further finds that the defendants' motion for summary judgment is due to be granted. A judgment in accordance with this memorandum opinion will be entered separately.

fail. The record is devoid of any evidence or even one example of harassment directed toward Ms. Mays. In making this finding, the court stresses that unsupported factual assertions cannot defeat a motion for summary judgment. *See* Fed.R.Civ.P. 56(e). Hence, the court finds that this claim is without merit and further discussion is unwarranted.